## THE UNITED STATES DISTRICT COURT  FOR
## THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ELVINCE  MERTIL,          )
                             )
                             )
        Plaintiff,        )
                             )
v.                       )        CASE NO.
                             )
ALEJANDRO MAYORKAS,   )
DEPARTMENT OF         )
HOMELAND SECURITY,    )
                             )
        Defendant.     )

## COMPLAINT

Plaintiff Elvince Mertil, by and through his undersigned counsel, brings this complaint against Defendant, Alejandro Mayorkas, as secretary of the Department of Homeland Security and states the following:

## JURISDICTION AND VENUE

1.     This is an action by Plaintiff, Elvince Mertil, for reinstatement, for compensatory damages, declaratory and injunctive relief, under the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.* ) ("Rehabilitation Act"), and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), as amended ("Title VII"), to redress injury caused by Defendant's disparate treatment by Defendant and for terminating the Plaintiff.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, the Rehabilitation Act, and Title VII. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys fees, costs, and damages.

3.      Defendant employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4.      Venue is proper in Miami-Dade County (28 U.S.C. § 89(c)), because Defendant does business in Miami-Dade County and some or all of the acts alleged herein took place in Miami-Dade County.

5.      Defendant conducts business in Florida and all of the acts and omissions occurred to Plaintiff while he worked in Florida for Defendant at Miami International Airport.


6.      Plaintiff is a resident of Miami-Dade County.

7.      All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

8.       On or about July 8, 2020, the Plaintiff received the "Final Order" from the Appellate Board of The Transportation Security Administration, Department of Homeland Security, and this lawsuit timely followed.  The Final Order is attached hereto as Composite Exhibit "A-1" attached hereto.

## GENERAL FACTUAL ALLEGATIONS

9.      Plaintiff was employed by Defendant as a Lead Transportation Security Officer (LTSO) at the Miami International Airport, from approximately 2016 until his termination.

10. On or about February 26, 2020, the Transportation Security Administration issued a formal Notice of Proposed Removal to the Plaintiff (see Composite Exhibit "A-2" attached hereto).

11. On or about April 17, 2020, the Plaintiff's previous attorney filed an appeal concerning the Plaintiff's wrongful dismissal (see Composite Exhibit "A-3" attached hereto).

12. On or about April 24, 2020, the Transportation Security Administration rescinded it's previously issued Removal Notice (see Composite Exhibit "A-4" attached hereto.

13. On or about April 30, 2020, the Transportation Security Administration wrongfully placed the Plaintiff on Administrative Leave (see Composite Exhibit "A-5" attached hereto).

14. On or about April 30, 2020, the Transportation Security Administration issued a wrongful Notice of Proposed Removal to the Plaintiff (see Composite Exhibit "A-6" attached hereto).

15. On or about July 8, 2020, the Transportation Security Administration issued a Final Opinion and Decision, same wrongfully removing the Plaintiff from his employment with the Defendant, based on spurious allegations and conclusions (see Composite Exhibit "A-7" attached hereto.

Count I:  Rehabilitation Act (Disparate Treatment)

16. Plaintiff realleges and incorporates as if fully set forth herein all of the preceding paragraphs of this complaint.

17. As a result of the foregoing, the Defendant violated the Rehabilitation Act.

18. As a direct and proximate result of the Defendant's conduct, Plaintiff suffered adverse job action, which resulted in the loss of Plaintiff's employment.

19. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, included but not limited to back wages, future wages, liquidated damages, attorney fees and costs.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Award Plaintiff compensatory damages, interest, job reinstatement, reinstatement of retirement benefits, attorney fees, costs and further relief as justice requires.

/s/

**Steven G. Miller, Esquire**
**Florida Bar No. 389854**
**Attorney for Elvince Mertil**
**4800 North Federal Highway**
**Suite 100-D**
**Boca Raton, FL 33431**
**(561) 367-7785**
**sgmatty@aol.com**

# DEPARTMENT OF HOMELAND SECURITY
## TRANSPORTATION SECURITY ADMINISTRATION
## PROFESSIONAL RESPONSIBILITY
## APPELLATE BOARD

ELVINCE MERTIL
Lead Transportation Security Officer
*Appellant,*

      v.

TRANSPORTATION SECURITY
ADMINISTRATION,
*Management.*

DOCKET NUMBER
AB—20-049

July 8, 2020

*Issue:*  *Admission of Illegal Drug Use; Lack of Candor*

### OPINION AND DECISION

On May 15, 2020, management removed the appellant from his position as a Lead Transportation Security Officer (LTSO) with the Transportation Security Administration (TSA) based on two Charges: *Admission of Illegal Drug Use* and *Lack of Candor*. The appellant filed a timely appeal with TSA's Professional Responsibility Appellate Board (Board). For the reasons noted below, the Board DENIES the appeal.

ANALYSIS AND FINDINGS

In proceedings before the Board, management bears the burden of proving the charge(s) by a preponderance of the evidence or substantial evidence, as applicable. In the present case, the applicable standard is a preponderance of the evidence. A preponderance of the evidence simply means that a fact is more likely to be true than untrue. If the evidence establishes the charge(s), management then bears the burden of showing that the penalty imposed was reasonable.

The Board considered all of the evidence and arguments submitted by both parties. Management based Charge 1, *Admission of Illegal Drug Use*, on one specification alleging that on December 19, 2019, during a polygraph examination that was part of the appellant's pre-employment application for the position of Custom Border Protection Officer with the United States Customs and Border Protection (CBP), the appellant admitted to eating a small piece of brownie that contained marijuana in October 2017, while he was employed with TSA.

Management based Charge 2, *Lack of Candor*, on one specification alleging that when applying for employment with the CBP, the appellant completed a Questionnaire for National Security Positions (eQIP) on March 15, 2019, and he failed to disclose in question 23 that he had ingested (by swallowing) marijuana in the last seven years.

## A-1 & A-7

Management alleged that the appellant violated TSA Management Directive (MD) 1100.73-5, *Employee Responsibilities and Code of Conduct* and the accompanying Handbook. Section 5. D. provides that TSA employees are responsible for behaving in a way that does not bring discredit upon the Federal Government or TSA and for observing the following basic on-the-job rules: (7) observe and abide by all laws, rules, regulations and other authoritative policies and guidance. Paragraph 6. A. states that TSA employees must comply with all standards, responsibilities, and code of conduct established by the directive and shall report any violation(s) of the directive to appropriate management officials. The Section notes that failure to comply with the directive and/or failure to report violations of the directive may result in corrective, disciplinary, or adverse action up to and including removal from Federal service. Paragraph 6. E. states that while on or off-duty, employees are expected to conduct themselves in a manner that does not adversely reflect on TSA or negatively impact its ability to discharge its mission, cause embarrassment to the agency, or cause the public and/or TSA to question the employee's reliability, judgement or trustworthiness. This applies regardless of whether the conduct is legal or tolerated within the jurisdiction it occurred. Section P. (1) of the Handbook states, in part, that TSA prohibits the use or possession of illegal substances and the inappropriate use of legal substances. Illegal substances include, but are not limited to cocaine, marijuana, opiates, amphetamines, and phencyclidine. The use of marijuana is prohibited by Federal law. State and local laws, as well as laws of other countries, do not affect the prohibition of marijuana use by TSA employees. Section P. (2) (a) states that employees are prohibited from using illegal drugs both on and off-duty. Further, Section F. (1) of the Handbook states, in part, that employees must cooperate fully with all TSA and DHS investigations and inquiries, including but not limited to inquiries initiated by supervisors and management officials, TSA Investigations (INV) or Department of Homeland Security Office of Inspector General (DHS OIG) unless a *Garrity* warning is issued to the affected employee. This includes providing truthful, accurate, and complete information in response to matters of official interest, and providing a written statement, if requested to do so.

As part of the appellant's pre-employment application for a position with CBP, the appellant provided a written statement, in conjunction with his polygraph examination on December 19, 2019. In that statement, he wrote that while on a vacation trip to Jamaica in October 2017, he ate a small piece from a brownie that contained marijuana while he was on a Bob Marley Tour.

On the appellant's pre-employment application in eQIP, Section 23, which asks if the appellant had "illegally used any drugs or controlled substances" and specifies that use "includes injecting, snorting, inhaling, swallowing, experimenting with or otherwise consuming," the appellant answered "no." On December 19, 2019, while being interviewed for employment with CBP, the appellant stated that the reason he did not disclose illegal drug activity on his eQIP was that "it was a little piece of brownie that had no affect and it was not continued afterwards."

The CBP notified TSA on December 23, 2019, of the appellant's disqualification based on his admission that he consumed marijuana. That information was then turned over to the TSA Office of Investigations (INV). In a follow-up interview with a Special Agent (SA) from INV and the Assistant Federal Security Director for Law Enforcement (AFSD-LE) on February 5, 2020, the appellant stated that while on a vacation trip to Jamaica between October 12-17, 2017, he ate a small piece of a brownie that contained marijuana while on a Bob Marley Tour. The appellant stated that at the time he ate the brownie, he was not aware it contained marijuana. The appellant stated that during the Bob Marley Tour, he became separated from his spouse and that later during

dinner his spouse told him that the brownies contained marijuana. The appellant stated that other than that piece of brownie, he has never done drugs.

On March 3, 2020, TSA Investigations conducted a second interview with the appellant telephonically after which the appellant produced a third statement in which he stated that he did not read his initial statement made on December 19, 2019, at the conclusion of his CBP polygraph examination, prior to signing it.

The appellant was issued a Notice of Proposed Removal (NOPR) on April 30, 2020. The NOPR advised the appellant of his right to make an oral and/or written reply with seven days. The appellant provided a written reply on May 4, 2020.

Management provided as evidence: Report of Investigation, dated April 10, 2020; Polygraph Report, dated December 19, 2019; and Questionnaire for National Security Positions, dated March 15, 2019.

On appeal, the appellant stated that the Agency entered its initial Final Decision on Removal, on the same set of facts, with the same disciplinary allegations, on March 30, 2020, and that he filed an appeal. The Agency then rescinded the initial removal, and the Board dismissed the case. He argued that the Agency now wants a "second bite of the apple" for the same disciplinary allegations, by filing the same Removal Determination again, on May 18, 2020. The appellant argued that the Agency's re-instatement of the dismissal, based upon the same disciplinary allegations, constitutes a violation of the basic principle of double jeopardy.

The appellant argued that he was never provided with a complete copy of the transcript of his statement, referenced in Charge 1, and that it is critical that he be provided with the document prior to the taking of final disciplinary action. He also argued the management mischaracterized his statements and that management has not established that he knowingly made incorrect statements.

Management replied and stated that the appellant was previously issued a NOPR on February 26, 2020, and was issued a Decision on March 30, 2020, removing him from his position based on two Charges, *Admission of Illegal Drug Use* and *Providing Conflicting Information to Investigating Officials*. Management stated that they rescinded the NOPR and Decision on April 24, 2020, and reinstated the appellant. Management stated that on April 30, 2020, the appellant was issued a new NOPR based on two Charges, *Admission of Illegal Drug Use* and *Lack of Candor*.

Management argued that all evidence relied upon was provided to the appellant with the NOPR, including the CBP Polygraph Report Examination Summary, Polygraph Examination Consent and the appellant's written statement to CBP, dated December 19, 2019. Management stated that the evidence relied upon also included an email from TSA Investigations, dated March 11, 2020, which contained a portion of the polygraph examination interview conducted on December 19, 2019, that clarified that the appellant knew that the brownie he ate contained marijuana and confirmed that he read his own signed statement prior to signing it. Management stated that the NOPR also included the subsequent written statements provided during the investigation, dated February 5, 2020, and March 3, 2020. Management stated that since the appellant claimed in his March 3, 2020, interview that he did not read his December 19, 2019, statement made at the end of the CBP polygraph examination, they obtained an audio transcript summary from CBP through email in an effort to clear up the discrepancy between the two statements. Management argued that the audio transcript

summary from CBP was provided to the appellant as part of the NOPR. Management argued that the audio transcript clearly illustrated that the appellant was given an opportunity to review his December 19, 2019, statement before signing it. Management argued that the appellant was provided all evidence used to support his removal and that if a more complete transcript exists, it was not provided to management. Management argued that they have no reason to question the credibility of the information provided by CBP and do not believe the appellant provided any further explanation as to when he was aware of the fact that the brownie contained an illegal drug during the polygraph examination.

Management argued that the appellant's argument that management mischaracterized his statements is without merit as the NOPR provided quotes from actual statements made by the appellant at two different times; the first statement was made as part of his pre-employment application for the position of CBP Officer on December 19, 2019, and the second statement was provided during a follow-up interview with a SA and AFSD-LE on February 5, 2020.

Management also gave no merit to the appellant's argument that management has not established that he knowingly made incorrect statements. Management noted that the appellant completed the eQIP in connection with his application for employment with CBP on March 15, 2019, and answered "no" to question 23 pertaining to illegal drug use or drug activity in the last seven years. Management also noted that in his response to the NOPR, the appellant stated that he found out the brownie contained marijuana "later in the evening," while in his statements on February 5, 2020, and March 3, 2020, he denied that he knew the brownie contained marijuana before he consumed it but stated that he learned the brownie contained marijuana from his spouse later that day. Management argued that therefore, when the appellant answered "no" to the use of illegal drugs in Section 23 of the eQIP on March 15, 2019, he knowingly provided incorrect information. Management further argued that in the appellant's CBP interview on December 19, 2019, he admitted to the polygraph examiner that he had omitted the illegal drug activity from his eQIP, stating, "the reason this was not disclosed on my e-QIP form is that it was a little piece of brownie that had no affect and it was not continued afterwards." Management argued that this statement confirms that the appellant knew on March 15, 2019, when he submitted the eQIP, that he had ingested marijuana in the last seven years.

The appellant replied to management's response and argued that all he was provided was an email from CBP which summarized his polygraph examination and that he had no opportunity to read the actual statement, or defend against it. The appellant argued that he was never provided with a complete copy of the transcript of his statement to CBP and that it is critical that he be provided with the document prior to the taking of the final disciplinary action.

The Board gave no merit to the appellant's arguments. Although the Board does follow the doctrine of "double jeopardy" as set out by the Merit Systems Protection Board, the appellant has not been disciplined twice for the same act. There is nothing in policy to prevent management from rescinding the action and subsequently issuing another Notice of Decision. Additionally, it is clear that the appellant was provided with the documentation relied upon by the Deciding Official.

With regard to Charge 1, the Board found that that the appellant's statements are preponderant evidence to support the Charge. The appellant admitted during his interview with CBP that he ingested a piece of a brownie that contained marijuana. The appellant was employed by TSA at the time he ingested the brownie. Although it was a bite of a brownie, management has met the burden

of preponderant evidence that the appellant ingested an illegal substance. Therefore, the Charge, *Admission of Illegal Drugs Use*, is SUSTAINED.

With regard to Charge 2, the evidence shows that the appellant gave conflicting statements regarding whether he knew before or after he ingested the brownie that it contained marijuana. The appellant does not deny however, that he ingested the brownie on a trip in October 2017. Therefore, it is clear that the appellant was less than truthful when he responded "no" to the question about using illegal drugs when he submitted his eQIP form on March 15, 2019. The eQIP questionnaire and the appellant's statements are preponderant evidence that the appellant lacked candor when he answered "no" to Section 23 of the eQIP form submitted on March 15, 2019. Although the appellant indicated in his statement that the reason this was not disclosed on his e-QIP form is that it was a little piece of brownie that had no affect and it was not continued afterwards. The amount is not the issue in the Lack of Candor charge, it is the fact that he provided conflicting statements. The Charge, *Lack of Candor*, is SUSTAINED.

Having sustained the Charges, the question is whether the Deciding Official has shown that the penalty of removal is consistent with the TSA *Guidelines for Conduct-Based Discipline for Common Offenses (Table of Offenses and Penalties)* (Table) and is reasonable.

On appeal, the appellant argued that management did not analyze the mandated disciplinary factors correctly. He argued that given the lack of adherence to the penalty factors, the penalty in this case is nothing short of being "arbitrary, capricious and completely unreasonable."

Management replied to the appeal and argued that the Deciding Official properly considered the penalty factors prior to concluding that the penalty of removal was reasonable and appropriate. Management asserted that the mitigating factors did not outweigh the nature and seriousness of the misconduct.

In deciding the penalty, the Deciding Official considered a numbers of factors. He considered the nature and seriousness of the appellant's offense and its relationship to his duties, position and responsibilities as an LTSO and TSA's mission of securing the safety of the traveling public. The Deciding Official also considered the appellant's work and disciplinary history; his length of service; the clarity with which he was on notice of the policies he violated; his confidence in the appellant's ability to perform his duties; his rehabilitative potential; the adequacy and effectiveness of any alternative sanctions to deter such conduct by the appellant or others in the future, and any mitigating and aggravating factors. The Deciding Official also reviewed the Table as applicable to the charged misconduct.

As aggravating factors, the Deciding Official considered that as an LTSO, the appellant occupies a position of trust and is expected to be truthful at all times. He considered that the fact that the appellant knowingly provided false information on the eQIP shows a potent disregard for the high standards of professionalism, integrity, and conduct that is essential of TSA leaders and is required by all employees. The Deciding Official considered that he can no longer rely on the appellant to be truthful and that failing to follow TSA policy that prohibits the use of illegal drugs goes to the heart of the TSA mission to ensure a safe and secure environment for the traveling public. The Deciding Official considered that the appellant's admission of illegal drug use, while employed by TSA, goes against TSA Core Values and caused him to question the appellant's ability to demonstrate daily fitness for duty without impairment due to illegal drugs, sleep deprivation,

medication or alcohol. He considered that the appellant's misconduct caused irreversible damage to his confidence in the appellant's ability to meet the high standards required for an LTSO and has caused the appellant's supervisors to question the appellant's judgment in the performance of his screening duties.

The Deciding Official considered the clarity with which the appellant was on notice of the rules he violated. He noted that the appellant was issued a Letter of Counseling for Failure to Follow Procedures on April 3, 2018. He also considered that each year, the appellant received and acknowledged that he read a copy of TSA MD 1100.73-5 and its corresponding Handbook and did so most recently on January 7, 2017. The Deciding Official considered that these documents specifically advised the appellant that he was to comply with the rules and policies and that he was aware or should have been aware of the policies he violated.

The Deciding Official also considered the consistency of the penalty with the Table, noting that the penalty for Admission of Illegal Drug Use is removal for the first occurrence of misconduct and the penalty for Lack of Candor has a penalty range of a 14-day suspension to removal for a first offense. He also noted that Appendix A of MD 1100.75-3, *Addressing Unacceptable Performance and Conduct*, Appendix A, (1) (e) provides that removal is required for the first offense involving illegal drug use.

As mitigating factors, the Deciding Official considered that the appellant has been employed with TSA since 2015 and has an otherwise satisfactory performance record and no prior disciplinary action.

The Deciding Official considered that no alternative sanction for the admission of illegal drug is reasonable and that each charge standing alone is sufficient to warrant removal. The Deciding Official determined that the mitigating factors do not outweigh the seriousness of the underlying misconduct.

The Board determined that the Deciding Official properly considered the penalty factors. The Board has sustained the Charge of *Admission of Illegal Drugs Use* as well as the Charge *Lack of Candor*. Removal is in the recommended penalty range for a first offense of *Lack of Candor* and is required for the Charge, *Admission of Illegal Drug Use*. Therefore, the Board determined that the penalty is reasonable and adheres to TSA policy.

<u>Decision</u>. The appeal is, therefore, DENIED. This is a final decision issued pursuant to TSA policy as set forth in TSA Management Directive 1100.77-1.

FOR THE BOARD:

**DEBRA S ENGEL**
Digitally signed by DEBRA S ENGEL
Date: 2020.07.08 21:00:49 -04'00'

Debra S. Engel
Chair
PR Appellate Board



**Transportation Security Administration**

OFFICIAL:   Office of Professional Responsibility
Arlington, VA  20598



Transportation
Security
Administration

Date:        February 26, 2020

To:          Elvince Mertil
             Lead Transportation Security Officer
             Miami International Airport

From:        Adam Ostrowsky
             Deputy Assistant Federal Security Director
             Miami International Airport

Subject:     Notice of Proposed Removal

Ref #:       20-2360/SE/MIA

In accordance with Transportation Security Administration (TSA) Office of Human Capital (OHC) Management Directive (MD) 1100.75-3, *Addressing Unacceptable Performance and Conduct*, this is notice that I am proposing that you be removed from your position of Lead Transportation Security Officer, SV-1802-F, with the TSA and the Federal Government in order to promote the efficiency of the service. As fully explained below, you have the right to submit a timely response to this proposal which is based on the following:

### Charge 1: Admission of Illegal Drug Use

Specification: On December 19, 2019, during a polygraph examination that was part of your pre-employment application for the position of Custom Border Protection Officer with the United States Customs and Border Protection (CBP), you admitted to eating a small piece of brownie that contained marijuana in October 2017, while you were employed with TSA.

### Charge 2: Providing Conflicting Information to Investigating Officials

Specification: On February 5, 2020, during an official TSA investigation, you provided a written statement to TSA Investigation (INV) Special Agent (SA) Rodolfo Martinez, Jr. and Assistant Federal Security Director- Law Enforcement (AFSD-LE), Omar Garcia, wherein you stated that at the time you ate the brownie, you were not aware it contained marijuana. This statement conflicts with your signed statement to CBP on December 19, 2019, wherein you state at the time you ate the brownie, you knew it contained marijuana.

Page 1 of 6

**A-2**

**Discussion**

As part of your pre-employment application for the position of Custom Border Protection Officer with the United States Customs and Border Protection (CBP), on December 19, 2019, you provided a written statement, in conjunction with your polygraph examination, declaring the following:

"While on a vacation trip to Jamaica in October 2017, on a Bob Marley Tour I ate a small piece from a brownie that contained marijuana. At the time I ate the brownie, I knew it contained marijuana. The reason this was not disclosed on my e-QIP form is that it was a little piece of brownie that had no affect and it was not continued afterwards."

In a follow-up interview and written statement that you provided to SA Martinez and AFSD LE Garcia on February 5, 2020, you stated the following:

"While on a vacation trip to Jamaica between October 12-17, 2017, on a Bob Marley Tour, I ate a small piece from a brownie that contained marijuana. At the time I ate the brownie, I was not aware it contained marijuana. During the Bob Marley Tour, I became separated from my spouse and later during dinner she advised me that those particular brownies contained marijuana. Other than that piece of brownie, I have never done any drugs."

In your statement which you provided to the CBP Office of Professional Responsibility on December 19, 2019, in conjunction with your polygraph examination, you admitted to eating a brownie and that you were aware it contained marijuana. In your statement on February 5, 2020, you also admitted to eating a brownie that contained marijuana, and you stated that you were not aware it contained marijuana until after you ate it. I find that the polygraph examination summary adds credibility to your first statement that you knew there was marijuana when you ingested the brownie and, therefore, find your second statement, dated February 5, 2020, to be self-serving and unpersuasive. Marijuana is an illegal substance prohibited under Federal law. As such, all federal employees are prohibited from the use or purchase of such illegal substance. Your use of marijuana in October 2017 occurred while you were employed with TSA and, as such, is inconsistent with the terms of your employment as a Lead Transportation Security Officer (LTSO) and with the Federal service.

Your actions in this matter violate TSA Handbook to MD No. 1100.73-5, *Employee Responsibilities and Code of Conduct*, Section P. (1) and P. (2). (a). Section P.1 states, in part, that, "TSA prohibits the use or possession of illegal substances and the inappropriate use of legal substances. Illegal substances include, but are not limited to, cocaine, marijuana, opiates, amphetamines, and phencyclidine. The use of marijuana is prohibited by Federal law. State and local laws, as well as laws of other countries, do not affect the prohibition of marijuana use by TSA employees." Section P. (2). (a) states that "Employees are prohibited using illegal drugs both on- and off-duty."

Your actions are in violation of TSA MD 1100.73-5, *Employee Responsibilities and Code of Conduct*, paragraphs 5.D, 5.D. (7), 6.A, and 6.E. Paragraph 5.D provides that, "TSA employees

Page 2 of 6

are responsible for behaving in a way that does not bring discredit upon the Federal Government or TSA and for observing basic on-the-job rules." Paragraph 5.D. (7) states that employees must observe and abide by "all laws, rules, regulations and other authoritative polices and guidance." Paragraph 6.A provides that "TSA employees must comply with all standards, responsibilities, and code of conduct established by this directive and shall report any violation(s) of this directive to appropriate management officials. NOTE: Failure to comply with this directive and/or failure to report violations of this directive may result in corrective, disciplinary, or adverse action up to and including removal from Federal service." Paragraph 6.E states "While on or off-duty, employees are expected to conduct themselves in a manner that does not adversely reflect on TSA or negatively impact its ability to discharge its mission, cause embarrassment to the agency, or cause the public and/or TSA to question the employee's reliability, judgment or trustworthiness. This applies regardless of whether the conduct is legal or tolerated within the jurisdiction it occurred."

Further, you actions violated TSA MD 1100.73-5, *Employee Responsibilities and Code of Conduct*, Handbook, Section F.(1), which states, in part, "Employees must cooperate fully with all TSA and DHS investigations and inquiries including but not limited to inquiries initiated by supervisors and management officials, TSA Investigations (INV) or Department of Homeland Security Office of Inspector General (DHS OIG) unless a *Garrity* warning is issued to the affected employee," and "This includes providing truthful, accurate, and complete information in response to matters of official interest, and providing a written statement, if requested to do so."

### Penalty Determination

I have considered a number of factors in determining the appropriate proposal for your misconduct including the nature and seriousness of your offense and its relationship to your duties, position, and responsibilities as a LTSO and TSA's mission of securing the safety of the traveling public; your work and disciplinary history; your length of service; my confidence in your ability to perform your duties; the clarity with which you were on notice of the policies you violated; and any mitigating or aggravating circumstances. I also reviewed TSA's Guidelines for Conduct-Based Discipline for Common Offenses applicable to the charged misconduct.

As mitigating factors, I considered that you have been employed with TSA since December 15, 2015, and have an otherwise satisfactory performance record with no prior disciplinary actions. However, having weighed these mitigating factors, I find that they do not outweigh the seriousness of the underlying misconduct.

As aggravating factors, I considered the nature and seriousness of your misconduct and its relationship to your duties, position, and responsibilities as an LTSO. As an LTSO you are expected to meet high standards of conduct and to strictly follow TSA policy including to refraining from the use of illegal drugs. Additionally, your conduct of providing conflicting information to an investigating official violates the basic standards of LTSO work and the need for integrity. As a LTSO, you are expected to understand the requirement for truthful, consistent answers to questions from an investigator. Your misconduct has caused irreversible damage to my and your supervisors' confidence in your ability to meet the high standards of

Page 3 of 6

professionalism, integrity, and conduct required by all employees. Further, your misconduct has caused your supervisors and I to question your judgement in the performance of your screening duties.

I also considered the clarity with which you were on notice of the rules you violated. On April 3, 2018, you were issued a Letter of Counseling for Failure to Follow Procedures and, on December 4, 2018, you acknowledged that you read and received a copy of TSA MD 1100.73-5 and its corresponding Handbook, *Employee Responsibilities and Code of Conduct*, as you do every year, which specifically advised you that you were required to comply with the rules and policies cited in this action. Therefore, you knew or should have known that these rules exist and apply to you. While this corrective action and your acknowledgement are not considered for the purposes of progressive discipline or matters in aggravation, they indicate your awareness of the applicable policies you violated.

Lastly, I considered the consistency of the penalty with TSA's Guidelines for Conduct- Based Discipline for Common Offenses. The penalty for Use of Illegal Drugs, Section C3, is removal for the first occurrence of misconduct. The penalty for Providing Conflicting Information, Section E2 has a penalty range of 14-day Suspension to Removal for a first offense. I also note that Appendix A, to MD 1100-75-3, *Addressing Unacceptable Performance and Conduct* provides in section A. 1. (e) that removal is required for the 1st offense involving illegal drug use. Based on my assessment of the nature and seriousness of your misconduct and the factors described above, I find that removal is the appropriate penalty to propose in this matter. I also find that this proposed penalty will promote the efficiency of the Federal service.

This notice is a proposal and not a decision.

You have the right to reply to this proposal orally and/or in writing and furnish any evidence in support of your reply within seven (7) calendar days after the date you receive this proposal. Consideration may be given to extending this time if you submit a written request stating your reasons for needing more time. Your written reply and any evidence should be sent to the Deciding Official, Richard Rzucidlo, Assistant Federal Security Director (AFSD) at 1336 NW 78th Avenue, Miami, Florida, 33126, or Richard.Rzucidlo@tsa.dhs.gov. You may make arrangements for an oral reply by contacting AFSD Rzucidlo at 305-341-6730. Any replies submitted will be given full consideration. You will be notified in writing of the final decision.

You have the right to be represented by an individual of your choice in preparing and presenting any reply. As a bargaining unit employee, you may select a representative from the American Federation of Government Employees (AFGE) to serve as your personal representative, but you are not required to do so. Please note that while you may select any individual to serve as your personal representative consistent with TSA policy, you may not select an individual employed by any union other than AFGE to serve as your personal representative.

If you choose to have a representative, you must provide your representative's name in writing to the Deciding Official before the expiration of the reply period and you must provide written notice of any change in representation. Management has the right to disallow your

Page 4 of 6

representative if the representation creates a conflict of interest or position or, where the representative is a TSA employee, if he or she cannot be spared because of critical TSA work. You are responsible for all costs associated with your representation, including any travel expenses. You may refer to TSA MD 1100.63-3, *Employee Representation*, for additional information.

You and your representative, if an agency employee, will be allowed a reasonable amount of official time to assist you in your reply, to review the material relied upon to support the reason for the proposed action, and to prepare and present your written and/or oral reply. You and your representative, if a TSA employee, must contact your immediate supervisor to make advance arrangements for the use of official time.

I have attached the material relied upon to support this proposed removal. This material will only be released to you and/or your designated representative.

If a decision is made to separate you from TSA, be advised that, pursuant to TSA MD, 1100.30-31, *Debarment of Applicants*, you would be debarred from TSA employment for a period of three (3) years if the separation is based on either: failure to successfully complete the Annual Proficiency Review or failure to successfully complete necessary required training (if applying to the same or similar position previously held); unacceptable performance; misconduct; and fitness (suitability) determination. The debarment would apply whether the final decision to separate was rendered or if you resign or retire after receiving this proposed removal notice.

The Employee Assistance Program (EAP) is available to you to provide counseling services and/or assistance and may be contacted at 1-800-222-0364. The EAP is a confidential resource designed to help employees address a wide range of personal or family issues.

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this action; it only represents receipt of this notice on the date signed.

Proposing Official:

_____          2/26/20
Adam Ostrowsky                            Date
Deputy Assistant Federal Security Director

Acknowledgement of Receipt:

_____          2/26/20
Elvince Mertil                            Date
Lead Transportation Security Officer

U. S. Department of Homeland Security • Transportation Security Administration
1336 NW 78th Avenue • Miami, Florida 33126 • 305-421-2436 • http://www.tsa.gov

**Delivery/Witness Information:**

Edwin Salinas                                    _Feb 26, 2020_
Print Name and Sign                          Date
Robert Colon                                  Feb 24, 2020

## Material Relied On

1. LTSO Mertil sworn statement to TSA INV, dated February 5, 2020
2. CBP Polygraph Report, dated December 19, 2019
3. LTSO Mertil written statement to CBP, dated December 19, 2019
4. Letter of Counseling, issued April 3, 2018
5. TSA MD 1100.73-5 Acknowledgment, dated December 4, 2018

U. S. Department of Homeland Security • Transportation Security Administration
1336 NW 78th Avenue • Miami, Florida 33126 • 305-421-2436 • http://www.tsa.gov

Law Offices
# MARK J. BERKOWITZ, P.A.

**ONE TEN TOWER**
110 S.E. 6ᵗʰ Street
**Suite 1700**
**Ft. Lauderdale, Florida 33301**

TELEPHONE (954) 527-0570
TOLL FREE   (800) 993-9889

TELECOPIER (954) 281-5881
E-mail: labor@markjberkowitz.com
Website: www.markjberkowitz.com

**Via E-mail**: OPRAB.AB@tsa.dhs.gov
Transportation Security Administration
OPR Appellate Board
Attention: OAB Coordinator
601 S. 12ᵗʰ Street
Arlington, Virginia 20598

April 17, 2020

**Re:**      **Appeal of TSO Elvince Mertil**
**Final Decision on Removal**
**Dated March 30, 2020**
<u>**Reference No. 20-2360/SE/MIA**</u>

Dear Sir:

I am submitting this Appeal of the Agency's Final Decision on Removal, on behalf of American Federation of Government Employees ("AFGE") Local 558 and Transportation Security Officer ("LTSO") Elvince Mertil ("Appellant"). The Miami Assistant Federal Security Director ("AFSD") of the Transportation Security Administration ("TSA," or, the "Agency"), Richard Rzucidlo, clearly committed reversible error, based upon critical *procedural due process* considerations, in implementing the Final Decision on Removal, based upon the following fundamental basis:

\*                                          \*                                          \*

## I.      <u>INTRODUCTION</u>

In proceedings before the Board, management bears the burden of proving the disciplinary allegation by a *preponderance of the evidence*, or by *substantial evidence*, as applicable. In the

1

**A-3**

present case, the applicable standard is the *preponderance of the evidence*. The evidentiary standard, by a preponderance of the evidence, means that the proposition to be proven by management, is more likely than not supported, by taking the evidence, as a whole, as adequate to support a conclusion. In addition, in the final analysis, management must establish that the penalty imposed was reasonable. These principles must also dovetail with the important legal principle of procedural due process; specifically, the employee must have access to all of the documents and information, upon which the disciplinary decision was based.

In this case, the Appellant was never provided with a copy of the transcript of his Statement, under Charge 1, Specification 1, and it is critical that he be provided with this document, prior to the taking of the final disciplinary action. Management failed to undertake this important step; and this failure constituted reversible error, mandating the overturning of the Decision on the Proposed Removal. Moreover, it is significant to point out that the Appellant claims that his actual statement is at substantial variance, with management's characterization of his statement.

The Appellant contends that according to his statement on December 19, 2019, he stated that he had no knowledge that the brownie contained marijuana until well after he ingested that food item; in fact, he ingested the brownie during the day, and he was not informed of the adulteration of the brownie, until that evening. Therefore, under Charge 2, there is no actual conflict between the Appellant's two statements.

This Appeal is timely, pursuant to TSA Management Directive ("MD") 1100.77-1 (C) (3), because it has been filed within thirty days of the effective date of the removal. [The Applicable Appeal Forms are attached hereto, as **EXHIBIT A**]. LTSO Mertil has granted AFGE Local 558 the power of attorney to pursue this appeal on his behalf. LTSO Mertil is a dedicated, hardworking, invaluable asset to the Agency; with approximately four years of dedicated service; and as we will explain more fully below, his removal will not contribute to the efficiency of the federal service; nor will the removal serve a legitimate government objective.

LTSO Mertil is a dedicated, hard-working, invaluable asset to the Agency, and his recent removal, for allegedly providing conflicting statements, is unreasonably harsh, wastes tremendous resources, and defies the policies to which TSA adheres. LTSO Mertil has been employed by TSA for approximately four years.

During that time period, he has consistently proven himself as an exemplary employee; and he has been credited with an excellent performance record, without the imposition of any discipline. Management has chosen to impose the most severe possible penalty possible; and to remove LTSO Mertil. This unjustifiably unforgiving punishment contradicts TSA's policy of imposing progressively harsh punishment. Accordingly, given the magnitude of these substantive and procedural errors, the Board should rectify Management's reversible error and reinstate LTSO Mertil to his position.

## II.     <u>STATEMENT OF FACTS</u>

With regard to <u>Charge 1, Specification 1, the Appellant did not admit to illegal drug use</u>. The incident in question, occurred approximately two years prior to the providing of the polygraph examination.  Again, the so-called admission was never made; the Appellant explained that he did not know that the brownie contained an adulterated substance until later that evening. Therefore, the Agency failed to prove this Disciplinary Charge by a *preponderance of the evidence*. Since there was no admission of illegal activity, the Appellant's prior statement did not at all conflict with his most recent statement to TSA, during an official investigation; wherein, he stated that he did not know that at the time he ingested the brownie, that it contained an unlawful substance, marijuana.

Therefore, Charge 2 cannot be said to be proven by a *preponderance of the evidence*. The Appellant's two statements were consistent; there was no substantive wrongdoing; and there was no inherent conflict, with regard to two statements which were given by the Appellant, the first statement to Customs and Border Protection; and the second statement to a TSA official investigation. From this analysis, there is no factual basis upon which to impose any discipline in this case; and certainly not the severe and draconian penalty of termination.

## III.    <u>LEGAL DISCUSSION</u>

## A) <u>THE FAILURE TO MEET THE *PREPONDERANCE OF THE EVIDENCE* STANDARD.</u>

As we noted above, the *preponderance of the evidence* is the applicable evidentiary standard, which is used in the burden of proof analysis. Under the *preponderance of the evidence standard*, the burden is met when the party with the burden convinces the trier of fact that there is a greater than 50% chance that the claim is true. Here, the contested facts are not more probable than their non-existence. The Appellant has denied that he made a wrongful admission; and certainly, the proof would have been borne out with the release of the transcript of the December 19, 201 9 statement; however, as we have seen, management failed to make such a disclosure in direct violation of fundamental principles of *procedural due process*.

Certainly, in cases such as this one, where the employee's livelihood is at stake, management must be strictly held to the preponderance of the evidence standard, as an element of proof. Termination is undoubtedly the capital punishment in labor relations; and as such, based upon the severity of the penalty, management must adhere to proof, within this evidentiary standard, which it wholly failed to accomplish in this case.

The fact that there was insufficient evidence, under a *preponderance of the evidence* inquiry, to sustain the disciplinary allegations, should end the appellate inquiry, and vacate the issuance of the Final Dismissal Letter. As we will explain more fully below, the Agency's Final

3

Decision on Removal in this case consistently and repeatedly violated Agency policy, as well as Management Directives.

## B) **THE FAILURE TO PROVIDE A MODICUM OF *PROCEDURAL DUE PROCESS***

A modicum of *procedural due process* is required when an employee is deprived of "life, liberty or property." One of the minimal procedural guarantees, under the broad category of *procedural due process*, is the right to know opposing evidence.

This fundamental right was denied to the Appellant, since he was never provided with a copy of the December 19, 2019 statement, which he provided to Customs and Border Protection. He contends that the statement would indeed have been exculpatory; and without the disclosure of this statement, it became virtually impossible for him to mount a proper defense, at the pre-determination hearing. This glaring error by management is sufficient legal grounds, in of itself, to reverse the Removal Decision and to reinstate the Appellant.

## C) **THE FAILURE TO CONSIDER PENALTIES UNDER THE *DISCIPLINARY MATRIX***

The TSA Table of Penalties is designed to provide management with guidance in the imposition of disciplinary penalties. There is no offense entitled, "providing conflicting information to investigating officials." Therefore, the alleged offense was mischarged; and at this point, it constitutes a legal nullity. We cannot turn the clock back at this point; and allow management to recharge the alleged offense in a more correct manner, the pre-determination hearing cannot be reconvened at this later juncture.

The closest possible applicable offense, within the *Disciplinary Matrix*, is entitled, "making a misstatement or misrepresentation with intent to mislead."[1] However, this so-called offense would not be applicable, since there was no misstatement; as we have stated and argued above, there was actually no factual conflict, taking into consideration both statements. Moreover, there was no intent to mislead in this case. The Appellant initially had no knowledge that he was ingesting an adulterated brownie.

Finally, there can be no admission of the use of illicit drugs, and the imposition of the associated penalty, dismissal, since the Appellant never made this admission. Management is presupposing the existence of certain material facts, without proving the requisite facts by a *preponderance of the evidence.*

---

[1] Even for the mitigated range for this offense, the penalty is only a thirty-day suspension; and not a removal. Therefore, the *Disciplinary Matrix* presupposes that progressive discipline is indeed applicable in such an incident. Perhaps management should have proposed the offense of "lack of candor," but it is too late at this juncture, to go back and refile the charges, based upon the time-honored principle of double jeopardy.

**D)** **THE DISCIPLINARY CALCULUS IMPOSED BY MANAGEMENT HERE WAS CLEARLY ERRONEOUS; THEREFORE, THE DISCIPLINARY PENALTY MUST BE VACATED UNDER THE *DOUGLAS FACTORS*.**

The Agency clearly did not analyze the mandated disciplinary factors correctly; and certainly, the bias within Management Directive No. 1100.75-3, favors mitigation of the disciplinary penalty,[2] to maintain the employer-employee relationship. Dismissal should be viewed as an extreme sanction, which is implemented only where there is no prospect of remediation or rehabilitation; and this is not the case here. Management failed to thoroughly analyze the *Douglas factors* and the weight which is to be given to each respective factor.

The factors to be considered by management under the directive, state, as follows:

(a) The nature and seriousness of the offense, and its relationship to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(b) The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public and prominence of the position. For example, certain employees such as supervisors or law enforcement officers may be held to higher standards than other employees;

(c) The employee's past disciplinary record. If past discipline is used, it must be mentioned in the notice of proposed action;

(d) The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers and dependability;

(e) The effect of the offense upon the employee's ability to perform at a satisfactory level, and its effect upon supervisor's confidence in the employee's ability to perform assigned duties;

(f) Consistency of the penalty with those imposed upon similarly situated employees for the same or similar offenses;

(g) The notoriety of the offense or its impact upon the reputation of the agency;

---

[2] Similar factors were used and thoroughly evaluated by the Merit System Protection Board in *Douglas* v. *Veterans Administration*, 5 M.S.P.B. 313 (1981).

(h) The clarity with which the employee was on notice of any rules violated in committing the offense or had been warned about the conduct in questions;

(i) The clarity with which the employee was on notice of performance expectations and problems with his or her performance;

(j) Potential for the employee's rehabilitation;

(k) Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter;

(l) The adequacy and effectiveness of alternative actions to deter such conduct or improve performance in the future by the employee or others.

(a) The Seriousness of the Offense:  Management merely assumed that the Appellant made a conclusive admission, when he did not; there was no actual proof of the existence of either alleged offense;

(b) The Employee's Job Level and Type of Employment: Management failed to recognize that the Appellant had a long history of achievement with the Agency, of approximately four (4) years, no methodology was listed for providing credit for the Appellant's distinguished service;

(c) The Employee's Past Disciplinary Record. Again, management failed to provide proper credit and or consideration, for the Appellant's exemplary performance record and his relative longevity with the Agency; for example, the Appellant was never previously disciplined during his tenure of employment with the Agency;

d) The Employee's Past Work Record and Longevity. Although management indicated that the employee received credit, for his past personnel record; it is largely unclear as to how the credit was made.  The employee has approximately four (4) years of service with the Agency, and although management stated that the employee had no prior discipline, the Agency failed to provide proper credit for the Appellant's accomplishments;

e) The Effect of the Offense Upon the Employee's Ability to Perform at a Satisfactory Level. The Decisional Letter, implementing the termination, somehow assumes that the Appellant is incapable of remediation, which is not the case. Moreover, since the Appellant did not make an admission of illegal conduct, he is entitled to the application of the principle of progressive discipline;

f) <u>Consistency of the Penalty Imposed with Other Actions Taken by TSA Leadership.</u> The Agency provided no evidence that the penalty was indeed consistent among employees, with the Appellant's chain of command, there was no such empirical evidence presented;

g) <u>The Notoriety of the Offense or its Impact Upon the Reputation of the Agency.</u> Management apparently claims that negative notoriety occurred, since the offense was allegedly so serious; however, there is no evidence that the Agency's reputation has been harmed by the Appellant's conduct:

h) <u>The Clarity with which the Employee Was on Notice of Any Rules Violated</u> There were no rules which were actually-violated, therefore, it cannot be said that he had advance notice that his conduct was indeed proscribed;

i)<u>The Clarity Upon Which the Employee Was Upon Notice of Performance Expectations</u> Again, there were no rules which were actually-violated, therefore, it cannot be said that he had advance notice that his conduct was indeed proscribed;

j) <u>Potential for Employee's Rehabilitation</u> Contrary to management's conclusion, there is an excellent prospect for rehabilitation/remediation, in this case. As noted above, LTSO Mertil has consistently performed well in the work place; and he has been recognized for his superior work. After four years of competent employment with the Agency, the employer/employee relationship should be maintained.

k) <u>Mitigating Circumstances</u> Again, contrary to management's analysis, mitigation is clearly mandated here, because of the following reasons: (i) longevity with the Agency; (ii) fully satisfactory performance evaluations; (iii) An excellent prospect for rehabilitation/remediation; and (iv) TSA management clearly failed to analyze whether a less severe penalty, would indeed serve supervisory interests, management merely focused on termination as a remedy. Management further misapplied factor (k) in its analysis; the bias is in favor of mitigation; and again, the process and procedure call for the Agency to examine the presence of bad faith, and or malice, on the part of the employee; and clearly, this process was not invoked here. Therefore, under the Agency's own policy, the ultimate penalty of termination is much too severe; and hence, in addition, it cannot be sustained under the applicable progressive discipline policy.

l) <u>The Adequacy and Effectiveness of Alternative Actions.</u> Management should evaluate the appropriateness of the penalty, in this particular situation; the dismissal of the employee will not contribute to the efficiency of the federal service; since the Agency has a big investment in the employee; and she has responded with fully successful performance evaluations and exemplary conduct. The Agency failed to adequately weigh and/or consider other lesser possible penalties, which would have

corrected the employee's allegedly proscribed workplace behavior. This is mandated under the applicable policy.[3]

Termination is not at all reasonable here, where the *Douglas Factors* have not be properly analyzed. Given the lack of adherence to the *Douglas Factors*, the penalty in this case was nothing short of being arbitrary, capricious and completely unreasonable.

## IV.   **CONCLUSION**

Termination should be reserved only for those extreme situations where there is no prospect of remediation or rehabilitation. Such an extreme situation does not exist in this case; and after approximately four years of excellent service with the Agency, a dismissal here would not contribute to the efficiency of the federal service.

The disciplinary penalty of termination, must be substantially mitigated in this case, based upon the following factors in our explanation and analysis:

(1) The disciplinary allegations were not proven by a *preponderance of the evidence*, management presupposed the existence of certain facts, namely, the admission, which did not exist; the disciplinary allegations were not properly charged as offenses;

(2) There is a huge due process violation in the investigation, since the Appellant requested to see copies of the pertinent statement of December 19, 2019, which allegedly constituted a violation; however, management refused to provide the pertinent information and as a result, the Appellant could not properly defend himself, at the pre-dismissal stage;

(3) Based upon a proper analysis of the *Douglas Factors* and the application of these critical factors to the instant case, especially based upon the employee's excellent performance record and the prospect for rehabilitation, the proposed penalty must be substantially mitigated;

(4) The applicable *Disciplinary Matrix*, as a source of guidance does not support the penalty of termination;

(5) The termination of the Appellant would not serve a legitimate government interest, a required finding, to justify the harsh penalty of termination;

---

[3] *See*, Factor (l) above.

(6) The removal of this employee would not contribute to the efficiency of the federal service, but rather, the Agency would be losing a valuable employee, who has proven himself, to be both competent and committed to the mission of the Agency.

Based upon these numerous procedural and substantive legal violations, the Final Decision on Removal should be immediately vacated, and LTSO Mertil should be reinstated to duty, with full back pay, along with associated job benefits and his seniority, *as a four year employee*. Policies, procedures and Management Directives cannot simply be discarded or ignored, which has definitely occurred in this case.

The Agency obviously has a tremendous investment in human capital here; and based upon his proven track record of achievement, the Appellant can continue to make an important and effective contribution to the federal service. In fact, upholding the dismissal would detract from the efficiency of the federal service, since LTSO Mertil has been such a valuable employee over such a long period of time.

Therefore, substantial mitigation of the disciplinary penalty is required in this case. If you require any additional information, please contact my office. Thank you for your courtesy and consideration.

Respectfully submitted,

/s/ Mark J. Berkowitz
Mark J. Berkowitz, on behalf
of AFGE Local 558 and LTSO
Elvince Mertil

cc:     AFGE Local 558
        LTSO Elvince Mertil

9



**Transportation
Security
Administration**

Date:           April 24, 2020

To:             Elvince Mertil
                Lead Transportation Security Officer
                Miami International Airport

From:           Richard Rzucidlo
                Assistant Federal Security Director
                Miami International Airport

Subject:        Rescission of Decision on Proposed Removal

Ref #:          20-2360/SE/MIA

This is to notify you that the Notice of Proposed Removal issued to you on February 26, 2020, and the Decision on Proposed Removal issued to you on March 30, 2020, are hereby rescinded.

You are reinstated to your position as Lead Transportation Security Officer without a break in service. You are directed to return to duty on 04/26/2020.

A personnel action has already been commenced to reinstate you back to the Federal Service. You will receive back pay for the creditable hours of the schedule you have missed since the Decision on Proposed Removal was put into effect.

You must contact me at (305) 421-2407 if you have any concerns or you anticipate any permissible delay in your return.

_____                    _____4/24/2020_____
Richard Rzucidlo                                  Date
Assistant Federal Security Director

Acknowledgement of Receipt


_____                    _____
Elvince Mertil                                    Date
Lead Transportation Security Officer


Page **1** of 2

**A-4**

Delivery Information:

_____        _____
Hand Delivered/Mailed by                                          Date

 **Transportation
Security
Administration**

Miami International Airport
1336 NW 78ᵗʰ Avenue
Miami, FL 33126

Date:      April 30, 2020

To:        Elvince Mertil
           Lead Transportation Security Officer
           Miami International Airport

From:      Daniel Ronan
           Federal Security Director
           Miami International Airport

Subject:   Placement on Administrative Leave – 30-days

The purpose of this letter is to inform you that you are being placed on administrative leave starting April 30, 2020, and ending no later than May 29, 2020. This action is being taken because you have been proposed for removal. You will remain on administrative leave until a decision has been made regarding your removal.

Administrative Leave is a non-duty paid status. While on administrative leave, we may need to contact you to obtain information or update you on the status of your administrative leave; you must be available from Monday through Friday between 0800 and 1630 hours via telephone or to report to the Miami International Airport upon management's request. If you are directed to return to duty, you must do so within one (1) hour, or at the time determined by management. Failure to respond and/or report to duty as directed will result in your being charged Absent Without Approved Leave (AWOL).

If you are unavailable due to medical reasons or personal activities, you must contact Deputy Assistant Federal Security Director (DAFSD) Adam Ostrowsky at 786-897-3652 to request leave (sick, annual or leave without pay) as appropriate. While on administrative leave, I remind you that if you need to take annual or sick leave you must do so in accordance with Agency policy. Your OPM 71 must be submitted to DAFSD Ostrowsky for review and approval. In the event you attempt to contact DAFSD Ostrowsky and he is not available, you must leave a voice message or email him at adam.ostrowsky@tsa.dhs.gov indicating which type of leave you are requesting (sick, annual or leave without pay), the date(s) for which you are requesting the leave and the amount of leave you are requesting. You must also leave a call-back number in case he has any questions concerning this request.

You are reminded that at any time you may be ordered to return to duty.

Transportation Security Administration • U.S. Department of Homeland Security
1336 NW 78ᵗʰ Avenue • Miami, Fl. 33126 • 305-913-7055• www.tsa.gov

**A-5**

Because you are on administrative leave status, you must not engage in any official duties or activities; and you must not obtain or possess any official Federal Government documents or records. If you are given, obtain or possess any such official documents or records, you must immediately contact leadership to make arrangements to return these items; you must also return any of the TSA equipment that is still in your possession. Please be aware that while on an administrative leave status, you are still subject to the provisions of 49 C.F.R. Part 1520 restricting the disclosure of sensitive security information, as well as the TSA MD and Handbook 1100.73-5, *Employee Responsibilities and Code of Conduct.*

For your information, the TSA Employee Assistance Program (EAP) is available to you and members of your family to assist with difficult situations. You may contact the EAP 24 hours a day, toll-free at 1-800-222-0364.

During the period of administrative leave, you will not be permitted access to the Miami International Airport on-site or off-site locations or any TSA facility unless instructed to do so. DAFSD Ostrowsky will be your point of contact for information and may be reached at 786-897-3652.

| DANIEL A RONAN | Digitally signed by DANIEL A RONAN Date: 2020.04.29 11:24:26 -04'00' |
|---|---|

Daniel Ronan
Federal Security Director

<u>29 April 2020</u>
Date

Acknowledgement of Receipt

_____          _____
Elvince Mertil                                                      Date
Transportation Security Officer

Transportation Security Administration • U.S. Department of Homeland Security
1336 NW 78th Avenue • Miami, Fl. 33126 • 305-913-7055• www.tsa.gov



**Transportation
Security
Administration**

Date:       April 30, 2020

To:         Elvince Mertil
            Lead Transportation Security Officer
            Miami International Airport

From:       Adam Ostrowsky
            Deputy Assistant Federal Security Director
            Miami International Airport

Subject:    Notice of Proposed Removal

Ref #:      20-4299/SE/MIA

On February 26, 2020, you were issued a Notice of Proposed Removal (see attached Notice of Proposed Removal, Ref #: 20-2360) which was rescinded on April 24, 2020. In its place, I am issuing you this new proposal for your removal from Federal service.

In accordance with Transportation Security Administration (TSA) Office of Human Capital (OHC) Management Directive (MD) 1100.75-3, *Addressing Unacceptable Performance and Conduct*, this is notice that I am proposing that you be removed from your position of Lead Transportation Security Officer, SV-1802-F, with the TSA and the Federal Government in order to promote the efficiency of the service. As fully explained below, you have the right to submit a timely response to this proposal which is based on the following:

### Charge 1: Admission of Illegal Drug Use

Specification: On December 19, 2019, during a polygraph examination that was part of your pre-employment application for the position of Custom Border Protection Officer with the United States Customs and Border Protection (CBP), you admitted to eating a small piece of brownie that contained marijuana in October 2017, while you were employed with TSA.

### Charge 2: Lack of Candor

Specification: When applying for employment with the CBP, you completed a Questionnaire for National Security Positions (eQIP) on March 15, 2019, and you failed to disclose in question 23 that you had ingested (by swallowing) marijuana in the last seven years.

Page 1 of 7

**Discussion**

As part of your pre-employment application for the position of Custom Border Protection Officer with the United States Customs and Border Protection (CBP), on December 19, 2019, you provided a written statement, in conjunction with your polygraph examination, declaring the following:

*"While on a vacation trip to Jamaica in October 2017, on a Bob Marley Tour I ate a small piece from a brownie that contained marijuana. At the time I ate the brownie, I knew it contained marijuana. The reason the reason this was not disclosed on my e-QIP form is that it was a little piece of brownie that had no affect and it was not continued afterwards."*

As is standard practice, the CBP notified TSA on December 23, 2019, of your disqualification based on admittance of consuming marijuana; that information was turned over to the TSA Office of Investigations to conduct an investigation.

In a follow-up interview and written statement that you provided to Special Agent (SA) Rodolfo Martinez and Assistant Federal Security Director – Law Enforcement (AFSD-LE) Omar Garcia on February 5, 2020, you stated the following:

*"While on a vacation trip to Jamaica between October 12-17, 2017, on a Bob Marley Tour, I ate a small piece from a brownie that contained marijuana. At the time I ate the brownie, I was not aware it contained marijuana. During the Bob Marley Tour, I became separated from my spouse and later during dinner she advised me that those particular brownies contained marijuana. Other than that piece of brownie, I have never done any drugs."*

In your statement which you provided to the CBP Office of Professional Responsibility on December 19, 2019, in conjunction with your polygraph examination, you admitted to eating a brownie and that you were aware it contained marijuana. In your statement on February 5, 2020, you also admitted to eating a brownie that contained marijuana, but you stated that you were not aware it contained marijuana until after you ate it. You further explained to investigators that you had not reviewed your statement to CBP before signing. Based on your declarations, SA Martinez requested a summarized audio transcript of the portion of your polygraph relating to your admitted drug use. This transcript illustrates that you were in fact given an opportunity to review your statement before signing and it also reflects your admission as charged above.

I find that the summarized audio transcript and the polygraph examination summary adds credibility to your first statement that, when you ingested the brownie, you knew there it contained marijuana and, therefore, I find your second statement, dated February 5, 2020, to be self-serving and unpersuasive.

Marijuana is an illegal substance prohibited under Federal law. As such, all federal employees are prohibited from the use or purchase of such illegal substance. Your use of marijuana in October 2017 occurred while you were employed with TSA and, as such, is inconsistent with the

terms of your employment as a Lead Transportation Security Officer (LTSO) and with the Federal service.

In addition, you provided false information on the eQIP you submitted to CBP as part of your pre-employment application. Section 23, specifically asks if you have "illegally used any drugs or controlled substances" and specifies that use "includes injecting, snorting, inhaling, swallowing, experimenting with or otherwise consuming." You answered no, which was untrue. On December 19, 2020, while being interviewed for employment with the CBP you admitted to the polygraph examiner that you had omitted illegal drug activity from your eQIP. Specifically, you stated that *"the reason this was not disclosed on my eQIP form is that it was a little piece of brownie that had no affect and it was not continued afterwards."*

Your actions are in violation of TSA MD 1100.73-5, *Employee Responsibilities and Code of Conduct*, paragraphs 5.D, 5.D. (7), 6.A, and 6.E. Paragraph 5.D provides that, "TSA employees are responsible for behaving in a way that does not bring discredit upon the Federal Government or TSA and for observing basic on-the-job rules." Paragraph 5.D. (7) states that employees must observe and abide by "all laws, rules, regulations and other authoritative polices and guidance." Paragraph 6.A provides that "TSA employees must comply with all standards, responsibilities, and code of conduct established by this directive and shall report any violation(s) of this directive to appropriate management officials. NOTE: Failure to comply with this directive and/or failure to report violations of this directive may result in corrective, disciplinary, or adverse action up to and including removal from Federal service." Paragraph 6.E states "While on or off-duty, employees are expected to conduct themselves in a manner that does not adversely reflect on TSA or negatively impact its ability to discharge its mission, cause embarrassment to the agency, or cause the public and/or TSA to question the employee's reliability, judgment or trustworthiness. This applies regardless of whether the conduct is legal or tolerated within the jurisdiction it occurred."

Your actions in this matter also violate TSA Handbook to MD 1100.73-5, *Employee Responsibilities and Code of Conduct*, Section P. (1) and P. (2) (a). Section P.1 states, in part, that, "TSA prohibits the use or possession of illegal substances and the inappropriate use of legal substances. Illegal substances include, but are not limited to, cocaine, marijuana, opiates, amphetamines, and phencyclidine. The use of marijuana is prohibited by Federal law. State and local laws, as well as laws of other countries, do not affect the prohibition of marijuana use by TSA employees." Section P. (2) (a) states that "Employees are prohibited from using illegal drugs both on- and off-duty."

Further, your actions violated TSA MD 1100.73-5, *Employee Responsibilities and Code of Conduct*, Handbook, Section F. (1), which states, in part, "Employees must cooperate fully with all TSA and DHS investigations and inquiries including but not limited to inquiries initiated by supervisors and management officials, TSA Investigations (INV) or Department of Homeland Security Office of Inspector General (DHS OIG) unless a *Garrity* warning is issued to the affected employee," and "This includes providing truthful, accurate, and complete information in response to matters of official interest, and providing a written statement, if requested to do so."

U. S. Department of Homeland Security • Transportation Security Administration
1336 NW 78th Avenue • Miami, Florida 33126 • 305-421-2436 • http://www.tsa.gov

I have reviewed the evidence of record, specifically the TSA Report of Investigation (ROI), dated April 10, 2020, which contains the documentation provided by the CBP and your written statements. I note there are inconsistencies between the statement you provided to the CBP while being polygraphed and the statements provided to the TSA Office of Investigations. In your first statement to CBP on December 19, 2019, you indicated the marijuana was in a brownie and you had knowledge of the marijuana before eating the brownie. In your statements of February 5, 2020, and March 3, 2020, while being investigated by TSA, you indicated that you were not aware that the brownie contained the marijuana until your wife advised you later during dinner.

Therefore, I find the Charges and Specifications as stated above are supported by a preponderance of the evidence.

## Penalty Determination

I have considered a number of factors in determining the appropriate proposal for your misconduct including the nature and seriousness of your offense and its relationship to your duties, position, and responsibilities as a LTSO and TSA's mission of securing the safety of the traveling public; your work and disciplinary history; your length of service; my confidence in your ability to perform your duties; the clarity with which you were on notice of the policies you violated; and any mitigating or aggravating circumstances. I also reviewed TSA's Guidelines for Conduct-Based Discipline for Common Offenses applicable to the charged misconduct.

As mitigating factors, I considered that you have been employed with TSA since December 15, 2015, and have an otherwise satisfactory performance record with no prior disciplinary actions. However, having weighed these mitigating factors, I find that they do not outweigh the seriousness of the underlying misconduct.

As aggravating factors, I considered the nature and seriousness of your misconduct and its relationship to your duties, position, and responsibilities as an LTSO. As an LTSO you are expected to meet high standards of conduct and to strictly follow TSA policy including to refraining from the use of illegal drugs. Additionally, I find your admission of illegal drug use and your lack of candor in submitting of false statement on your background investigation to be in direct conflict to our mission. As a LTSO, you are expected to understand the requirement for truthful, consistent answers in any official setting, including submission of the e-QIP. Your misconduct has caused irreversible damage to my confidence in your ability to meet the high standards of professionalism, integrity, and conduct required by all employees. Further, your misconduct has caused your supervisors and I to question your judgement in the performance of your screening duties.

I also considered the clarity with which you were on notice of the rules you violated. On April 3, 2018, you were issued a Letter of Counseling for Failure to Follow Procedures and, on January 7, 2017, you acknowledged that you read and received a copy of TSA MD 1100.73-5 and its corresponding Handbook, *Employee Responsibilities and Code of Conduct,* as you do every year, which specifically advised you that you were required to comply with the rules and policies cited in this action. Therefore, you knew or should have known that these rules exist and apply to you.

Page 4 of 7

While this corrective action and your acknowledgement are not considered for the purposes of progressive discipline or matters in aggravation, they indicate your awareness of the applicable policies you violated.

Lastly, I considered the consistency of the penalty with TSA's Guidelines for Conduct- Based Discipline for Common Offenses. The penalty for Admission of Illegal Drug Use, Section C3, is removal for the first occurrence of misconduct. The penalty for Lack of Candor, Section E2 has a penalty range of 14-day Suspension to Removal for a first offense. I also note that Appendix A, to MD 1100-75-3, *Addressing Unacceptable Performance and Conduct* provides in section A. 1. (e) that removal is required for the first offense involving illegal drug use. Based on my assessment of the nature and seriousness of your misconduct and the factors described above, I find that removal is the appropriate penalty to propose in this matter. I also find that this proposed penalty will promote the efficiency of the Federal service.

This notice is a proposal and not a decision.

You have the right to reply to this proposal orally and/or in writing and furnish any evidence in support of your reply within seven (7) calendar days after the date you receive this proposal. Consideration may be given to extending this time if you submit a written request stating your reasons for needing more time. Your written reply and any evidence should be sent to the Deciding Official, Richard Rzucidlo, Assistant Federal Security Director (AFSD) at 1336 NW 78th Avenue, Miami, Florida, 33126, or Richard.Rzucidlo@tsa.dhs.gov. You may make arrangements for an oral reply by contacting AFSD Rzucidlo at 305-341-6730. Any replies submitted will be given full consideration. You will be notified in writing of the final decision.

You have the right to be represented by an individual of your choice in preparing and presenting any reply. As a bargaining unit employee, you may select a representative from the American Federation of Government Employees (AFGE) to serve as your personal representative, but you are not required to do so. Please note that while you may select any individual to serve as your personal representative consistent with TSA policy, you may not select an individual employed by any union other than AFGE to serve as your personal representative.

If you choose to have a representative, you must provide your representative's name in writing to the Deciding Official before the expiration of the reply period and you must provide written notice of any change in representation. Management has the right to disallow your representative if the representation creates a conflict of interest or position or, where the representative is a TSA employee, if he or she cannot be spared because of critical TSA work. You are responsible for all costs associated with your representation, including any travel expenses. You may refer to TSA MD 1100.63-3, *Employee Representation*, for additional information.

You and your representative, if an agency employee, will be allowed a reasonable amount of official time to assist you in your reply, to review the material relied upon to support the reason for the proposed action, and to prepare and present your written and/or oral reply. You and your

representative, if a TSA employee, must contact your immediate supervisor to make advance arrangements for the use of official time.

I have attached the material relied upon to support this proposed removal. This material will only be released to you and/or your designated representative. Audio recordings of the interviews with TSA Investigations will be made available for review in the TSA offices upon request. Please contact Human Resources Specialist Debora White, at debora.white@tsa.dhs.gov, to request availability.

If a decision is made to separate you from TSA, be advised that, pursuant to TSA MD, 1100.30-31, *Debarment of Applicants*, you would be debarred from TSA employment for a period of three (3) years if the separation is based on either: failure to successfully complete the Annual Proficiency Review or failure to successfully complete necessary required training (if applying to the same or similar position previously held); unacceptable performance; misconduct; and fitness (suitability) determination. The debarment would apply whether the final decision to separate was rendered or if you resign or retire after receiving this proposed removal notice.

The Employee Assistance Program (EAP) is available to you to provide counseling services and/or assistance and may be contacted at 1-800-222-0364. The EAP is a confidential resource designed to help employees address a wide range of personal or family issues.

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this action; it only represents receipt of this notice on the date signed.

Proposing Official:


_____          ___4/29/20___
Adam Ostrowsky                             Date
Deputy Assistant Federal Security Director



Acknowledgement of Receipt:


_____          ___4/30/20___
Elvince Mertil                             Date
Lead Transportation Security Officer

U. S. Department of Homeland Security • Transportation Security Administration
1336 NW 78th Avenue • Miami, Florida 33126 • 305-421-2436 • http://www.tsa.gov

**Delivery/Witness Information:**

_Kim Guentut RG_           _4/30/2020_
Print Name and Sign                 Date

## Material Relied On

1. Notice of Proposed Removal, issued February 16, 2020
2. Report of Investigation dated April 10, 2020
3. Polygraph Report dated December 19, 2019
4. Questionnaire for National Security Positions dated March 15, 2019
5. Letter of Counseling, issued April 3, 2018
6. TSA MD 1100.73-5 Acknowledgment, dated January 7, 2017

U. S. Department of Homeland Security  •  Transportation Security Administration
1336 NW 78th Avenue  •  Miami, Florida 33126  •  305-421-2436  •  http://www.tsa.gov